brought into the state subsequent to the passage of the act of 1796, *ch.* 67, that she was entitled to her freedom, even if they found the facts last above stated to be true. This opinion and direction the Court, [*Nelson*, A. J.] gave to the jury. The defendant excepted; and the verdict and judgment being for the petitioner, he appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, EARLE, and JOHNSON, J.

*Shaaff*, for the Appellant, referred to the acts of 1802, *ch.* 68; 1813, *ch.* 56; and 1796, *ch.* 67, *s.* 7; and *De Kerlegand vs. Negro Hector*, 3 *Harr. & M'Hen.* 185.

*Magruder*, for the Appellee.

THE COURT concurred in the opinions of the County Court in the *first* and *second* bills of exceptions, but dissented from that in the *third* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

<div style="text-align:right">1814.<br>Sprigg<br>vs<br>Negro Presly</div>

---

## SPRIGG VS. NEGRO PRESLY.

<div style="text-align:right">DECEMBER.</div>

APPEAL from *Frederick* County Court from a judgment on a petition for freedom. The general issue was pleaded.

1. At the trial the petitioner, (now appellee,) offered in evidence, that he was the child of a mulatto woman named *Esther*, who was the slave of *T. Sprigg* of *Frederick* county, who during all his life-time was a citizen of this state, where *Esther* was born his slave, and continued to be held by him in slavery until 1804, when the said *Sprigg* suffered her and her child, the petitioner, to be carried to the county of *Washington*, in the district of *Columbia*, by one *C. Herstons*, and that she and the petitioner continued there, employed by and residing with *Herstons* for two years, when they were sent back to *Frederick* county by *Herstons*, to the said *Sprigg*, with whom they continued to reside, and to be employed by him until his death in

<div style="font-size:smaller">A petitioner for freedom, being the slave of T S of this state, was, when about three years of age, carried with the permission of T S to the county of Washington, in the district of Columbia, by C H in 1804, where he continued employed by, and residing with C H, for two years, when he was sent back to this state to T S, with whom he continued to reside and to be employed until the death of T S in 1810—Held, that the petitioner was entitled to freedom</div>

<div style="font-size:smaller">E H deposed, that she hired Esther, the mother of the petitioner for freedom, from T S in 1810 for one year, who informed her he intended Esther for M H, and after the death of T S she paid the wages to C H, who brought an order from the defendant, which order was expressed to be for the use of M H. That at the time of E H hiring Esther, on her advising T S to hire Esther to her husband, who was a free man, he objected, and said he had no thought of hiring her to any body, but he would talk with Mrs. S, and if on consu ting her she thought it advisable, the witness might have Esther, and a few days after the defendant informed her she could have Esther for $24 per year—Held, that the testimony of E H was admissible</div>

<div style="font-size:smaller">If a negro slave was in possession of C H, and whilst so T S, the master of the slave, verbally gives the slave to M H, the daughter of C H, then an infant of four years old, and left the slave in the possession of C H, for the use of M H, and C H kept possession of the slave for the benefit of M H, then such verbal gift is sufficient to transfer the property in the slave to M H, without any other delivery</div>

1810. That when the petitioner was carried to the district of *Columbia* he was about three years old. The defendant then prayed the court to direct the jury, that if they found these facts to be true, they were not sufficient to entitle the petitioner to his freedom. The Court, [*Shriver* and *Nelson*, A. J.] refused to give this direction; but were of opinion, and so directed the jury, that if they found the facts to be true, the petitioner was entitled to his freedom. The defendant excepted.

2. The petitioner then offered to read in evidence the deposition of Mrs. *E. Hall*, (admitted by the parties to be read in evidence so far as it contains matters that can properly be offered in evidence,) who deposed, that she hired *Esther* from *T. Sprigg* in 1810, and that she was with her about one year. That after the death of *T. Sprigg* she paid the wages due for said hire to *C. Herstons*, who brought an order from the defendant, (which order was expressed to be for the use of *M. Herstons.*) That *T. Sprigg* told the deponent, about the time aforesaid, that he intended *Esther* for *M. Herstons*, and on her advising him to hire her to her husband, who was a free man, *Sprigg* said no, he would not, for that she was good for nothing enough already, and if he hired her to her husband she would make all her family as worthless as herself. He further observed, that he had no thought of hiring her to any body, but he would talk with Mrs. *Sprigg*, and if on consulting her she thought it advisable, the deponent might have *Esther*; and that a few days after the defendant came up and let the deponent know she could have *Esther* for $24 per year. The defendant then objected to the reading of this deposition. But the court were of opinion that the same was legally admissible in evidence, and permitted it to be read to the jury. The defendant excepted.

3. The defendant then offered in evidence, by the testimony of *C. Herstons*, a competent witness, that *Esther*, the mother of the petitioner, was sent by her master *T. Sprigg* to the house of the witness, a few days after the witness had married the daughter of the said *Sprigg* in 1797. That *Esther* continued with the witness until the death of his wife in 1808, before which time the petitioner was born, being now about 13 or 14 years old. A few days after the death of the wife of the witness, the said *Sprigg* came to the house of the witness in *Frederick* town,

1814.

Sprigg
vs
Negro Presly

in *Frederick* county, and said to him, I have given *Esther* and her children, (of whom the petitioner was one,) to *M. Herstons,* she being then an infant about four years old, and was then at the house of the said *Sprigg* in *Frederick* county, about 7 miles from *Frederick* town, and continued with him until 1807, when she went to reside with her father, the witness, in *George* town. At the time of this declaration of *Sprigg* to the witness, *Esther* and her children, of whom the petitioner was one, were at the house of the witness, the father and guardian by nature of *M. Herstons,* and were then and there left in his possession by the said *Sprigg,* and from thenceforth were held by the witness as the property of *M. Herstons,* and for her. That the witness held and possessed in *Frederick* town, the said *Esther* and her children, of whom the petitioner was one, for *M. Herstons,* and as her natural guardian, from the time of the said declaration of the said *Sprigg* to him, until he removed to *George* town, in the district of *Columbia,* in 1804. When he so removed he carried *Esther,* and her children, of whom the petitioner was one, with him, and held and possessed them in *George* town aforesaid, as the natural guardian of *M Herstons,* and for her, until 1807, when finding *Esther* troublesome and disagreeable to him, he sent her and her children, of whom the petitioner was one, to the said *Sprigg* in *Frederick* county. That *Sprigg* kept her and her children at his house until 1810, when he hired her out, and the witness in 1811, after the death of *Sprigg,* received her hire for the use of *M. Herstons.* The petitioner then offered in evidence the inventory taken in July 1810, of the personal estate of *Sprigg,* and which includes the petitioner. The defendant then offered in evidence, by the said *Herstons,* that he was in *New York* at the time of the death of the said *Sprigg,* and when the said inventory was returned. He came to this state before the day appointed for the sale of the personal estate of the said *Sprigg,* and on making known to the administrator that the petitioner was so given to *M. Herstons,* the petitioner was not sold with the property of the deceased. That *M. Herstons* is the daughter of the witness, and the granddaughter of the said *Sprigg.* The defendant then prayed the opinion of the court to the jury, that if they found from the evidence that the petitioner was in possession of *C. Herstons,* and that whilst he was

1814.

Ford
vs
Gwinn

so in possession, *T. Sprigg*, the master of the petitioner, verbally (as proved by *Herstons*,) gave the petitioner to *M. Herstons*, the daughter of *C. Herstons*, then an infant of four years old, and then left the petitioner in the possession of *C. Herstons*, for the use of *M. Herstons*, and that *C. Herstons* kept possession of the petitioner for the benefit of *M. Herstons*, that then the said verbal gift was sufficient to transfer the property in the petitioner to *M. Herstons*, without any other delivery. This opinion the court refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court, where the cause was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, EARLE, and JOHNSON, J. by

*Shaaff*, for the Appellant; and by
*Magruder*, for the Appellee.

THE COURT concurred with the County Court in the opinions in the *first* and *second* bills of exceptions, but dissented from that in the *third* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

DECEMBER.     FORD, Terretenant of PRESTON, vs. GWINN's Adm'r.

J G obtained a judgment against B P, on which a *scire facias* was issued against his terre-tenant, who pleaded—1 That B P was not seized of the land of which he was returned tenant. 2. That before the *scire facias* was issued a *ca sa* had issued against B ,who was taken in execution, and committed to R A the sheriff; that B P escaped, and suits were brought by J G on R A's bond as sheriff, for the escape, and judgments obtained against R A, and his sureties. A demurrer to the last plea was ruled good.

APPEAL from *Harford* County Court. This was a writ of *scire facias* sued out on a judgment rendered in that court in August 1797, in favour of the appellee's intestate against *Preston*. The defendant, (now appellant,) pleaded two pleas—1. That *Preston* was not seized of the lands of which he the defendant was returned tenant, &c. 2. That the plaintiff ought not to have execution of the lands, &c. because before suing out the *scire facias* a *ca. sa.* issued against *Preston*, who was arrested and brought into court, and committed to the custody of *Robert Amos*, junior, the then sheriff. That *Preston* escaped from the custody of the said sheriff. That the said *Gwinn* brought suits on the said *Amos's* bond as sheriff, for the said escape. That in March 1800, a judgment

To show that B P was in 1797, at the time when a judgment was rendered against him, seized of the land of which J F was, on a *scire facias* issued on the judgment, returned tenant, evidence was given of a devise of the land to B P in 1766, by his father J P, who had been in possession a considerable time before his death; a conveyance by B P to J L in May 1793; a conveyance by J L to J H in June 1799; and a conveyance from J H to J F, the terretenant, in 1801—*Held*, that such evidence was not sufficient to prove a seisin in B P in the land in question, at the time the judgment was obtained against him.